UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

RAYMOND M. AKINS,            )
                             )
       *Plaintiff*,          )
                             )    1-11-CV-00091
v.                           )
                             )    Chief Judge Curtis L. Collier
BENTON OIL SERVICE, INC.,    )
                             )
       *Defendant*.          )

**MEMORANDUM**

Before the Court is a motion for summary judgment filed by Defendant Benton Oil Service, Inc. ("Defendant" or "Benton Oil") (Court File No. 15). Plaintiff Raymond Akins ("Plaintiff") filed a response (Court File No. 17) and Defendant submitted a reply (Court File No. 18). For the reasons set forth below, the Court will **DENY** Defendant's motion for summary judgment (Court File No. 15).

**I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

   **A.    Factual Background**

Plaintiff was employed by Defendant for sixteen years. Ross Benton ("Benton") assumed the position of company president in 2004 from his mother when she retired. Benton's sister, Wendy Higdon ("Higdon") also became executive vice president at this time. Benton was in his mid-thirties when he became president and Higdon was in her mid-forties when she became executive vice president.

In 1993, Benton hired Plaintiff to work at Benton Oil as a truck driver and Plaintiff worked in that position until mid-2008 when he went out of work for heart surgery. This surgery necessitated

a six week medical leave. Upon returning to work, Plaintiff informed Defendant his physical condition precluded him from driving trucks. Plaintiff was subsequently transferred from his position as a full-time truck driver to administrative work inside Defendant's office.

Plaintiff asserts that upon returning to work after his first heart surgery his main duties consisted of counter sales and working in dispatch (Court File No. 17-3 ("Pl.'s Dep."), pp. 82, 89, 92). Defendant, however, asserts Plaintiff's main duties upon returning to work were ethanol data entries (*id*. at 85-87). According to Plaintiff's deposition, his duties included an assortment of tasks, including data entry on ethanol, maintenance, dispatching, and counter sales (*id*. at 82, 89, 92). Once Plaintiff's heart "leveled out" he also continued to drive trucks on a limited basis, but only when the drivers could not cover the load (*id*. at 88).

In 2009, Benton Oil's ethanol sales decreased significantly. It lost its major ethanol distribution contracts, and the price of ethanol rose above the price of gasoline, causing ethanol to become unattractive to potential customers. Defendant contends these factors had a significant effect on the duties performed by Plaintiff, who spent much of his time performing ethanol-related functions. By mid-2009 Plaintiff admits that his work on ethanol data entries had become "minimal" (*id*. at 188). During the summer of 2009, Plaintiff began performing the duties of dispatcher Carl Hames ("Hames"), who is eight years older than Plaintiff, when Hames was out for approximately three months. Upon Hames's return to work in September 2009, Defendant reduced Plaintiff's schedule to two days per week.

Plaintiff continued to work two days per week until November 2009, when he went out for a second heart procedure which took place on November 6, 2009 and was supposed to be performed on an outpatient basis. Plaintiff suffered numerous complications after the second heart surgery and

2

was out of work from November 2009 through mid-January 2010. Although the record is ambiguous on Plaintiff's brief return in January, he returned to work for one week and then had to miss for another several weeks. Plaintiff did not resume his two-day per week work schedule until the second week of February 2010. Plaintiff's employment was terminated on February 12, 2010.

In addition to Benton Oil struggling to retain clients, in 2009 Defendant discovered that three of its employees had stolen over two million dollars in value from the company. These circumstances required Benton to spend much of his time in mid- to late- 2009 out of the office, trying to obtain new business and to convince former customers to return to Benton Oil. During this time, Defendant asserts that Higdon turned her attention to cutting costs and salvaging as much of the business as possible (Court File No. 16-3 ("Higdon Dep."), p. 14).[1] Defendant asserts that during this time Higdon terminated a number of drivers and administrative employees who were no longer necessary to Benton Oil operations (*id*. at 48). The parties adamantly disagree on who made the ultimate decision to terminate Plaintiff's employment. Defendant contends that it was Higdon, acting alone and on her own determination, who made the decision and took action consistent with that decision (*id.* at 33-34). Plaintiff submits that Benton, acting in his capacity as president of Benton Oil, actually made the decision to fire Plaintiff (Pl.'s Dep., pp. 94, 132).

Beginning in the last three or four years of his employment, Plaintiff observed ageist comments being made by Benton (*id*. at 155-56). Below are the comments made by both Benton and Higdon that Plaintiff claims represent age animus, which allegedly was the primary motivation behind the termination of Plaintiff's employment.

---

[1] Wendy Higdon's deposition can be found in part both in Court File No. 17-6 and Court File No. 16-3. For purposes of simplicity, the Court will refer to Higdon's deposition in its entirety.

- Benton describing Plaintiff as "over the hill," "too damn old to keep," and "so old that he was liable to blow a gasket at any time" (Court File No. 17-5 ("Glenn Akins Aff."), ¶ 3).

- Benton referring to Plaintiff and the other drivers as "the Geritol bunch," "old farts," and "antiques" (Pl.'s Dep., pp. 155-56, 262-63).

- Benton stating, "We need some younger blood around here," referring to employees in the front and back office (Pl.'s Dep., pp. 168-69).

- Benton referring to Carl Hames stating, "My God, the man's old as dirt. It's time he retired" (Pl.'s Dep., pp. 131, 160).

- Benton describing Carl Hames as an "old fart" (Pl.'s Dep., p. 156).

- Benton stating that Carl Hames was getting too old and that either Hames needed to be fired or that he (Benton) was going to quit (Glenn Akins Aff. ¶ 3).

- Benton stating to Larry Lowe (Plaintiff's then-supervisor) that the company's insurance would not be so expensive if there were not so many claims by the older employees (Pl.'s Dep., p. 161).

- Higdon stating that the employees were "getting too old and over the hill" and that Higdon "was going to make some changes" (Glen Akins Aff. ¶ 4).

- In 2009, Kevin Culpepper ("Culpepper") heard both Benton and Higdon make age-biased comments. Culpepper alleges that Benton made such statements on many occasions and although he cannot remember the substance of the comments, he recalled that they were

4

directed toward older employees, and were not made in a joking manner. Culpepper also alleges that the comments related to Plaintiff (Court File No. 17-4 ("Culpepper Aff."), ¶ 4).

Both Benton and Higdon deny any age-biased disposition or making any ageist comments (Court File No. 17-2 ("Benton Dep."), pp. 27-30; Higdon Dep., pp. 46-47).

### B. Procedural Background

Plaintiff filed his Complaint in this Court on April 13, 2011 alleging Defendant discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. (Court File No. 1). Plaintiff originally alleged Defendant had violated the ADEA by both creating a hostile work environment and discharging or otherwise discriminating against Plaintiff with respect to the terms and conditions of his employment because of his age (*id*.). In Plaintiff's response to Defendant's motion for summary judgment, however, Plaintiff conceded that he could no longer prevail on the hostile work environment claim (Court File No. 17, p. 1). Therefore, the Court will only discuss Plaintiff's second claim that Defendant discharged or otherwise discriminated against Plaintiff with respect to the terms and conditions of his employment because of his age.

Plaintiff claims he has suffered financially and emotionally due to the wrongful action of Defendant and seeks compensatory damages for lost wages, liquidated damages, attorney's fees, court costs, and damages for humiliation and embarrassment. Plaintiff also seeks an injunction requiring Defendant to re-employ Plaintiff at his former position or at an equivalent job with all employment rights and benefits to which he would have been entitled but for his discharge, or in the alternative, front pay and benefits in lieu of reinstatement (Court File No. 1).

Defendant now moves for summary judgment on the remaining ADEA claim.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-CV-63, 2009 WL 3762961, at *2, *3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return

6

a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. DISCUSSION

"A plaintiff may establish a claim under the ADEA by offering either direct or circumstantial evidence of age discrimination." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citing *Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 348 (6th Cir. 1997)). Plaintiff fails to present enough evidence of direct discrimination. Plaintiff has, however, presented sufficient circumstantial evidence under the *McDonnell Douglas* framework to make summary judgment inappropriate.

### A. Direct Evidence

The ageist comments made by Benton and Higdon do not constitute direct evidence of discrimination. Direct evidence "*requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's action." *Wexler*, 317 F.3d at 570 (emphasis added). Unlike circumstantial evidence, "direct evidence of discrimination does not require a fact finder to draw any inferences in order to conclude that the alleged employment action was motivated, at least in part by prejudice against members of the protected class." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). Further, the Sixth Circuit has determined that "comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003).

Although Plaintiff asserts direct evidence is established through statements made by both Benton and Higdon, none of the statements rise to the level of direct evidence. While the ageist

7

statements may lead to an inference that Plaintiff's termination was motivated by age discrimination, they do not conclusively establish that discrimination was in fact a motivating factor. The Sixth Circuit has stated that a decision-maker's statements must be *related* to the decisional process itself to sufficiently demonstrate animus. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998). None of the alleged comments in this case deal directly with the adverse employment action and neither Benton or Higdon ever made a comment that can be directly linked to Plaintiff's termination. In fact, Plaintiff admits that some of the statements were made three or four years before he lost his job and thus may not have been close in time or related to Plaintiff's termination (Pl.'s Dep., pp. 155-56).[2]

Further, the parties diverge on the issue of who made the decision to terminate Plaintiff's employment. As noted above, the Sixth Circuit has stated that in order to establish direct evidence, the discriminatory comments must have been made by an individual involved in the decision-making process. Defendant asserts it was Higdon who decided to terminate Plaintiff's employment and she carried out the termination without any input, approval, or guidance from Benton (Court File No. 18, pp. 2-8). Conversely, Plaintiff contends Benton made the decision to terminate his employment and Benton had the final say over all employee termination issues (Court File No. 17, pp. 5-6). Plaintiff also asserts that even if Higdon, not Benton, made the decision to terminate Plaintiff's employment, direct evidence is nonetheless established through Higdon's discriminatory statements (*id*. at 8). Regardless of who made the decision to terminate Plaintiff's employment, neither Higdon's nor Benton's comments rise to the level of direct evidence. Therefore, the issue of who

---

[2] The record is ambiguous as to when each of the alleged statements was made. The most specific date available appears to be Kevin Culpepper's testimony that the statements were made in 2009 (Culpepper Aff. ¶ 4). Beyond that, no definitive dates are given.

8

Case 1:11-cv-00091-CLC-SKL   Document 37   Filed 07/05/12   Page 8 of 15   PageID #: 606

made the ultimate decision is not relevant. Although Plaintiff makes a rigorous argument for direct evidence of discrimination, the Court concludes the evidence is insufficient to establish direct evidence of discrimination.

### B. Circumstantial Evidence

Plaintiff has proved sufficient circumstantial evidence of age discrimination under the *McDonnell Douglas* framework to defeat Defendant's motion for summary judgment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "It is the rare situation when direct evidence of discrimination is readily available, thus victims of employment discrimination are permitted to establish their case through inferential and circumstantial evidence." *Kline*, 128 F.3d at 348. Circumstantial evidence allows a fact-finder to draw a reasonable inference that discrimination occurred. *Id*. Under the *McDonnell Douglas* framework the plaintiff has the initial burden of making a *prima facie* case of age discrimination through circumstantial evidence. *Lefever v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012). Once a *prima facie* case has been made, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id*. (citing *Kline*, 128 F.3d at 348). After the defendant articulates a legitimate, nondiscriminatory reason for the adverse employment action the burden then falls, once again, on the plaintiff to "produce sufficient evidence from which the jury may reasonably reject the employer's explanation as pretextual." *Id*. Plaintiff has presented sufficient evidence under the *McDonnell Douglas* standard to defeat Defendant's motion for summary judgment.

#### 1. *Prima Facie* Case

As indicated above, under the circumstantial method of proof, Plaintiff has the initial burden of establishing a *prima facie* case. To establish a *prima facie* claim, Plaintiff must show four

9

elements: "1) that he was a member of a protected class; 2) that he was discharged; 3) that he was qualified for the position held; and 4) that he was replaced by someone outside of the protected class." *Geiger v. Tower Auto.*, 579 F.3d 614, 622-23 (6th Cir. 2009).[3] Neither party disputes the existence of the first three elements, but they disagree on the fourth element. Whether Plaintiff was replaced by someone outside of the protected class is the most significantly disputed issue between the parties and is the issue that is central to the Court's grant or denial of summary judgment.

It is Plaintiff's position he was, in fact, replaced by Penny Gill ("Gill"). Gill was forty-six at the time Plaintiff was fired. In age discrimination cases the protected class includes employees at least forty years old, but the fourth element of a *prima facie* case may be modified to require replacement "not by a person outside the protected class, but merely replacement by a significantly younger person." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003) (citing *Kline*, 128 F.3d at 352-53). Although Gill was in Plaintiff's protected class at the time of termination, Gill is significantly younger than Plaintiff (eighteen years younger). The eighteen year age difference adequately satisfies the modified fourth element.

Plaintiff still must provide evidence he was, in fact, *replaced* by Gill. Although Gill was already employed by Defendant at the time of Plaintiff's termination, Plaintiff asserts that a "person is replaced . . . when another employee is hired or reassigned to perform the plaintiff's duties" *not in addition to other* duties. *Barnes v. GenCorp.*, 896 F.2d 1457, 1465 (6th Cir. 1990). Further,

---

[3] The Sixth Circuit encourages a lenient application of the *prima facie* elements. The Sixth Circuit has described the *prima facie* requirement as one that "is not onerous" and that poses "a burden easily met." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 1990). Moreover, the Sixth Circuit strongly favors "a case-by-case approach that focuses on whether age was in fact a determining factor in the employment decision." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

Plaintiff asserts Gill was reassigned Plaintiff's duties *not in addition to her own prior duties* and thus, qualifies as a "replacement" under the fourth element (Court File No. 17, p. 11). Plaintiff contends Gill was hired as an outside salesperson in 2009 but was moved to dispatch and counter sales when Plaintiff was on medical leave and then laid off, so as to replace Plaintiff (Riddle Dep., pp. 29-30).

Defendant argues Plaintiff has failed to satisfy the fourth element of a *prima facie* claim because Plaintiff was not replaced by someone outside of his protected class (Court File No. 16, p. 15). To support this contention Defendant points to the fact no one was hired to replace Plaintiff and that the individual identified by Plaintiff as his replacement was already employed at the time of Plaintiff's termination (Pl.'s Dep., pp. 194-95). Defendant claims Plaintiff's duties were reassigned and spread out among three different individuals: Gill, Hames, and Mark Huff ("Huff") (Higdon Dep., pp. 47-48). All three of these individuals were over forty years old at the time Plaintiff was terminated, putting them in the same protected class as Plaintiff.

Both parties have presented evidence to support their position on this issue. There is a genuine dispute as to whether Plaintiff's duties were spread out among existing employees in addition to their other work or if Gill specifically took over Plaintiff's duties *not* in addition to her own. If the first is true, then the fourth element of a *prima facie* claim *would not* be established. If the latter is true, then the fourth element would be established. On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano* 557 U.S. 557 (2009) (quoting *Scott v. Harris*, 550 U.S.

11

372 (2007)). Here, there is a genuine dispute of material fact and therefore, in viewing the facts in a light most favorable to Plaintiff, Plaintiff satisfies the fourth *prima facie* element.[4]

### 2. Legitimate, Nondiscriminatory Reason for Employment Termination

Once a plaintiff has established a *prima facie* case of age discrimination the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for the plaintiff's termination. *Lefevers*, 667 F.3d at 725. Defendant has presented sufficient evidence to show that its business was in decline when Plaintiff was terminated. In 2009, the sales of ethanol had drastically decreased and Benton Oil had lost a significant number of its ethanol distributing contracts. To cut costs and salvage as much of the business as possible, Higdon let numerous employees go. The record supports the notion that Defendant was struggling to survive because in 2011 Benton Oil was forced to sell the majority of its assets to Sweetwater Valley Oil. Sweetwater Valley Oil did not pay any cash for Benton Oil's assets, but simply agreed to forgive debts which had been incurred as Defendant tried to stay in business (Higdon Dep., pp. 19-21). Benton Oil was a struggling business that had to make employment cut backs to try to stay in business. This is a legitimate, nondiscriminatory reason why Plaintiff was terminated.

Further, because Plaintiff was out of work for so long due to his second heart surgery, Defendant submits that once Plaintiff returned there was no work for him to perform. He was only

---

[4] Plaintiff submits that there is an alternative to the fourth element that is satisfied by a plaintiff showing that he or she was treated worse than younger employees (Court File No. 17, p. 11). Even if this is a valid approach, there is no merit in this argument because there is little to no evidence Plaintiff was treated worse than younger employees. There is also another alternative to the fourth element that applies only in workforce reduction cases and is satisfied by a plaintiff producing additional direct, circumstantial, or statistical evidence that indicates he was singled out by the employer for discharge for impermissible reasons. *Douglas v. Int'l Auto. Components Group N. Am., Inc.*, 11-1411, 2012 WL 2016247 at *1 (6th Cir. 1987) (citing *Geiger*, 579 F.3d at 622). Neither party, however, used or cited the workforce reduction alternative.

working two days per week prior to his surgery and after being out from November 2009 to February 2010 others had simply taken over his duties and his services were no longer needed. This is a second legitimate, nondiscriminatory reason for why Plaintiff was terminated and by presenting both of these reasons Defendant has sufficiently established its burden under the *McDonnell Douglas* framework.

### 3. Pretext

After Defendant sets forth a legitimate, nondiscriminatory reason for the decision to terminate Plaintiff, then the burden shifts back to Plaintiff to provide evidence of pretext. *Lefevers*, 667 F.3d at 725. Pretext essentially means that an employer's reason for taking an adverse action is false and is simply masking a discriminatory purpose. *Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205, 1218 (6th Cir. 2003). If an employer's justification for the termination can be eliminated, then "discrimination may well be the most likely alternative explanation …." *Id.* Thus, the Court must determine whether Plaintiff has presented evidence tending to show Defendant's reasons for termination were only a cover up for age discrimination.

Plaintiff argues that Defendant's reasons for terminating Plaintiff are pretextual.[5] The Sixth Circuit has determined that a plaintiff can demonstrate pretext by establishing that: (1) the stated reasons for the adverse action had no basis in fact; (2) the stated reasons for the adverse action were

---

[5] The Sixth Circuit has expressed that "an employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Asmo v. Keane, Inc.*, 471 F.3d 588, 595 (6th Cir. 2006). Plaintiff asserts Defendant has given two different reasons for Plaintiff's termination: 1) Lack of work and 2) Failure to show up for work and therefore, services no longer needed (Court File No. 17, pp. 14-15). Defendant argues that its reason for terminating Plaintiff has been consistent throughout litigation and did not shift from "lack of work" to "services no longer needed" but, instead, both are correct and corresponding reasons (Court File No. 18, p. 18). Regardless of the strength of this argument, Plaintiff has presented evidence of pretext sufficient to defeat summary judgment.

13

not the actual reasons; or (3) the stated reasons for the adverse action are insufficient to explain the action. *Harris v. Metro. Gov't of Nashville*, 594 F.3d 476, 486 (6th Cir. 2010). Plaintiff has met his burden by presenting evidence that indicates the reasons for the adverse action had no basis in fact and were not the actual reasons for termination. Plaintiff claims that Defendant's "lack of work" reason for termination is "unworthy of credence" because while Defendant claims it had no work for Plaintiff to perform, it was hiring new employees (Court File No. 17, p. 18). In fact, Plaintiff asserts that Defendant hired six new employees in a three month span around when Plaintiff was fired (*id.*). Defendant admits that it hired new drivers during that time, but explains that they were replacement hires for employees who quit or were terminated (*id.* at 21). Moreover, although Defendant claims its ethanol sales were plummeting, its own records indicate that the amount of ethanol purchased in January of 2010 far exceeded the amount that had been purchased in the previous eight months (Court File No.17-8, ("Riddle Dep."), pp. 46-47). The Court recognizes these facts, when viewed in a light most favorable to Plaintiff, may cause a finder of fact to conclude Defendant's reasons for termination were not the actual reasons and had no basis in fact. Plaintiff has provided evidence sufficient to satisfy either the first or second prong discussed in the *Harris* decision and has, therefore, met his burden of providing evidence of pretext. Accordingly, summary judgment is inappropriate.

Time and time again both the Supreme Court and the Sixth Circuit have held that "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the Plaintiff was the victim of intentional discrimination." *Geiger*, 579 F.3d at 620 (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 153 (2000)). This Court recognizes that, in this case, reasonable minds can differ on this central question. The statements made by both

14

Benton and Higdon could enable a fact-finder to conclude Defendant harbored a general animus toward Plaintiff because of his age. A reasonable fact-finder could also find age was a motivating factor in Plaintiff's termination. Accordingly, the Court must deny Defendant's motion for summary judgment.

**IV.     CONCLUSION**

Plaintiff has not provided sufficient proof of direct evidence of discrimination. However, Plaintiff has presented sufficient circumstantial evidence under the *McDonnell Douglas* framework to make summary judgment inappropriate. Because a reasonable fact-finder could conclude Plaintiff's age was a motivating factor in the adverse employment action, the Court **DENIES** Defendant's motion for summary judgment (Court File No. 15).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**